IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARMAINE PRATER, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. 21-CV-3566 |
| | : | |
| AMERICAN HERITAGE FEDERAL | : | |
| CREDIT UNION, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**SÁNCHEZ, C.J.**                                                                 **DECEMBER 9, 2021**

Currently before the Court are two Amended Complaints filed by Plaintiff Charmaine

Prater against various financial and insurance entities, credit reporting agencies, and individuals

who work for those entities.  (*See* ECF Nos. 13 & 14.)  Prater has also filed a "Motion for

Extraordinary Relief of Dead Line of November 10, 2021," (ECF No. 12), which asks the Court

to accept her submissions filed after the deadline, and a "Motion for Additional Time to Amend

Case with an Attorney," (ECF No. 15), which asks the Court for another opportunity to amend

with the assistance of an attorney.  The Court will grant Prater's Motion to consider her filings,

deny her Motion for another extension, and dismiss this case for the reasons that follow.

I.       **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

"Prater is a regular litigant in this Court who has a history of filing unintelligible and

meritless cases."  *See Prater v. Am. Heritage Fed. Credit Union*, Civ. A. No. 21-3566, 2021 WL

3869940, at *1 & n.2 (E.D. Pa. Aug. 27, 2021) (discussing Prater's filing history).  Her initial

Complaint in this civil action named the following Defendants: (1) American Heritage Federal

Credit Union ("AHFCU"); (2) CUNA Disability Insurance; (3) Vice President Brian Hahn of

AHFCU; (4) Mrs. Sweeney, identified as a back office loan officer; (5) President Bruce Foulke;

(6) Laynette Smart, identified as an "executive admin. assistant"; (7) Nationwide Insurance; (8)

INS Agent Jerard Morgan; (9) Dougherty Auto Sales; (10) American Heritage Fed. CU Quality

Control Insurance; (11) State Insurance Disability Ins. Company Dept.; (12) Experian Credit

Bureau; (13) Equifax Credit Bureau; (14) Transunion Credit Union; and (15) AHFCU Employee

T. Coleman. (ECF No. 1 at 1.)[1]  Prater's handwriting was difficult to read, which made her

allegations difficult to discern with any clarity.  She alleged that the Defendants "violated

Federal laws under fair Truth & Lending Laws and other civil rights violation including

Racketeering." (*Id.* at 2.)  Although unclear, Prater's claims appeared to be primarily based on

certain car loans and the repossession of her car, among other matters related to her finances or

financial information.

In an August 27, 2021 Memorandum and Order, the Court granted Prater leave to

proceed *in forma pauperis* and dismissed her Complaint for several reasons. *See Prater*, 2021

WL 3869940, at *1.  First, the Court concluded that Prater's Complaint failed to comply with

Federal Rule of Civil Procedure 8 because her allegations were unclear, at times illegible, and

failed to clearly link the Defendants to conduct described in the Complaint. *Id.* at *3.  Second,

the Court explained that, to the extent Prater was raising civil rights claims under 42 U.S.C. §

1983, her claims failed because she did not allege that the Defendants were state actors subject to

liability under that statute. *Id.* at *4.  Third, Prater failed to allege a claim under the Racketeer

Influenced and Corrupt Organizations Act ("RICO") based on her conclusory reference to

"racketeering." *Id.*  Fourth, Prater failed to state a claim under the Truth in Lending Act

("TILA") because she failed to allege that credit terms were not adequately disclosed to her and

it was not clear what provision of that statute she believed had been violated. *Id.*  Finally, Prater

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

failed to state a claim under the Fair Credit Reporting Act ("FCRA") based on the furnishing of

inaccurate information to credit reporting agencies, because she failed to clearly identify the

accounts at issue, describe the false or misleading information, or allege that she filed a dispute

about the information to which a furnisher of the information failed to respond. *Id.* at \*5.

The Court dismissed Prater's claims with leave to amend to give her an opportunity to

cure the defects in her claims. *Id.* She sought, and was granted, two extensions of time to do so.

(ECF Nos. 8-11.) Prater returned with two Amended Complaints, one of which she filed under

seal.[2] Since she has not provided any basis for sealing her second pleading, the Court will direct

that the pleading be unsealed. The Amended Complaints[3] name the following Defendants: (1)

AHFCU; (2) Brian Hahn, identified as the Vice President of AHFCU; (3) Bruce Foulke,

identified as the President of AHFCU; (4) Laynette Smart aka Lanette Smart, identified as

Hahn's Secretary; (5) Twilla Coleman, identified as a current or former employee of AHFCU;

(6) "Ms. Jackson of AHFCU"; (7) CUNA Insurance Company; (8) State National Insurance Inc.;

---

[2] Prater was given until November 10, 2021 to file an amended complaint. When she filed her amended pleadings, she also moved to request that the Court excuse her for filing a few days past the deadline. (ECF No. 12.) The Court will grant that Motion.

[3] "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (internal citations omitted). Nevertheless, the United States Court of Appeals for the Third Circuit has on occasion considered superseded pleadings in the *pro se* context, presumably with the purpose of giving the litigant's claims the broadest possible construction. *See Edwards v. Rice*, 837 F. App'x 86, 88 (3d Cir. 2020) (*per curiam*) (finding a Fourth Amendment claim based on a review of the "amended complaint, when read in conjunction with the original complaint and the attached exhibits" despite the general rule that an amended complaint supersedes the original pleading). *But see Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) (explaining that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings"). Since Prater's filings were submitted around the same time and appear to have intended to be read in conjunction with each other, the Court will consider both filings together as her Amended Complaint in this matter.

(9) Nationwide Insurance, LLC; (10) Jerard Morgan, identified as a Nationwide Insurance

Agent; (11) Dougherty Auto Sales LLC/Corp.; (12) American Independent Insurance Company;

(13) National General Insurance Company; (14) Debbie Kramer, identified as "Sup" for National

General; (15) Experian; (16) Equifax Info Services LLC; (17) TransUnion; and (18) Mrs.

Sweeny, identified as the "back office manager" for AHFCU.  (ECF No. 13 at 1; *see also* ECF

No. 14 at 1-2.)

Prater claims that AHFCU and its staff "violated truth and lending federal laws

racketeering frauds using [her] identity & credit" and that the credit reporting agencies "failed to

conduct an adequate investigation" of unspecified disputes.  (ECF No. 14 at 2.)  She also

contends her civil rights were violated by racketeering, deceptive business practices, and

disability discrimination, among other things, and alludes to TILA and the Equal Credit

Opportunity Act ("ECOA").  (ECF No. 13 at 1-2 & 3.)  The factual basis for these claims,

however, is unclear due to the manner in which the Amended Complaints are pled.

Numerous loans, debts, and accounts appear to be at issue in the Amended Complaints,

including a car loan Prater appears to have received for a 2010 Kia Sedona, although the

universe of financial matters in question is unclear.  (ECF No. 14 at 3-4; ECF No. 13 at 1

(alleging that "the Defendants above, a financial Institution, and Disability Insurance Company

CUNA . . . violated plaintiff by failing to provide plaintiff with true and accurate legal sales

agreement, identify theft, as multiple Auto loans for approx. 7k each, credit cards and other

loans.").)  Prater indicates that CUNA Insurance Company, Hahn, and Smart (his Secretary)

"have failed to pay off auto loan" and have also refused to acknowledge that a vehicle (possibly

the Kia, although that is unclear) is paid in full.  (ECF No. 14 at 4.)  Hahn and Smart also

allegedly instructed AHFCU staff "to submit late payments" to the credit reporting agencies and

to report two car loans "and other loans that are fraudulent." (*Id.*) Prater alleges she disputed "the bogus debts" with the credit reporting agencies but that the agencies refused to remove the "negative report," which affected her credit score. (*Id.*; *see also* ECF No. 13 at 2 (alleging that the credit reporting companies "failed to investigate [Prater's] disputes" and kept her "in the red and or with a low credit score").)

Throughout the Amended Complaints, Prater generally suggests that the Defendants played a role in creating and/or reporting fraudulent accounts in her name or permitting others to create fraudulent accounts in her name. She alleges that Defendant Hahn, Vice President of AHCFU, forced her to use Nationwide Insurance and may have denied her a warranty and/or "duplicate[d]" her loans after being made aware that "fraudulent additional funds" were "illegally approved" and paid to the car dealership. (ECF No. 13 at 2.) The Court understands Prater to be claiming, in part, that certain forgeries or fraudulent documents prohibited her from receiving the title to a car and negatively affected her credit. (*Id.*) Presumably this is one of the same cars for which she received a loan.

Prater also appears to be raising claims based on physical harm she claims to have sustained due to the actions of third parties, including her estranged husband, whom she describes as abusive. She claims she was assaulted "by alleged relative of AHFCU" and that her information was provided "to males who are/were on STATE parole in psychiatric unit and with violent history." (ECF No. 14 at 3.) Defendant Coleman features in some of these allegations, but her alleged role in these events is not clear. (*See* ECF No. 14 at 3.) At one point, Prater suggests that Coleman is related to her estranged husband and may have "assisted in the frauds" for that reason. (ECF No. 13 at 1.) Prater also alleges that she was "stalked" by a relative of Ms. Jackson. (*Id.* at 2.) It appears that some portion of Prater's allegations concern credit cards or

other financial matters she alleges her estranged husband improperly accessed after they married,

and that these allegations underlie some of Prater's allegations of fraud and improper

authorization of her accounts.  (*See, e.g.*, ECF No. 13 at 2 ("Mrs Sweeney from the back office

denied plaintiff a mortgage but reached out to plaintiff [sic] violent estrange husband with a 10k

loan offer under plaintiff identity."); *id.* (alleging that Defendant Morgan of Nationwide

"illegally duplicated" her information and added her then husband's information, presumably to

an insurance account, after the husband obtained access to Prater's AHFCU credit cards and

"other documents from Nation Wide insurance"); *id.* at 3 (indicating that Prater's husband was

able to obtain a loan in her name).)  Prater also generally alleges that certain of the Defendants

benefitted from "schemes" carried out by them or the entities for which they worked.  (ECF No.

13 at 3.)

Prater seeks assorted relief from the Court.  She seeks a variety of injunctive relief,

including release of the title to her 2010 Kia Sedona, and other corrections to her financial

information.  (ECF No. 13 at 4; ECF No. 14 at 3.)  She also seeks compensatory and punitive

damages.  (ECF No. 13 at 4; ECF No. 14 at 3.)

## II.    STANDARD OF REVIEW

Since Prater is proceeding *in forma pauperis*, her Amended Complaints are subject to 28

U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the pleadings if they fail to state a

claim.   Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the

same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),

*see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted). "[M]ere conclusory statements do not suffice." *Id.*

As Prater is proceeding *pro se*, the Court construes her allegations liberally. *Higgs v.*

*Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021)

(citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will

"apply the relevant legal principle even when the complaint has failed to name it." *Vogt*, 8 F.4th

at 185. However, "'pro se litigants still must allege sufficient facts in their complaints to support

a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant also "'cannot flout

procedural rules — they must abide by the same rules that apply to all other litigants.'" *Id.*

Moreover, a complaint may be dismissed for failing to comply with Federal Rule of Civil

Procedure 8. *Garrett*, 938 F.3d at 91. To conform to Rule 8, a pleading must contain a short and

plain statement showing that the plaintiff is entitled to relief. *See Travaline v. U.S. Supreme*

*Court*, 424 F. App'x 78, 79 (3d Cir. 2011) (*per curiam*). The Third Circuit has explained that in

determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should

"ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken

by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation

omitted). A pleading may still satisfy the "plain" statement requirement "even if it is vague,

repetitious, or contains extraneous information" and "even if it does not include every name,

date, and location of the incidents at issue." *Id.* at 93-94. The important consideration for the

Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a

defendant can respond on the merits." *Id.* at 94.

However, "a pleading that is so 'vague or ambiguous' that a defendant cannot reasonably

be expected to respond to it will not satisfy Rule 8." *Id.* at 93; *see also Fabian v. St. Mary's*

*Med. Ctr.*, Civ. A. No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) ("Federal

Rule of Civil Procedure 8 requires that pleadings provide enough information to put a defendant

on sufficient notice to prepare their defense and also ensure that the Court is sufficiently

informed to determine the issue.") (quotations omitted).  Dismissals under Rule 8 are "'reserved

for those cases in which the complaint so confused, ambiguous, vague, or otherwise

unintelligible that its true substance, if any, is well disguised.'"  *Garrett*, 938 F.3d at 94 (quoting

*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

### III.     DISCUSSION

#### A.  Failure to Comply with Rule 8

It is difficult to determine whether Prater has a basis for a plausible claim because the

true substance of her claims is well-disguised.  Although Prater's Amended Complaints reflect

her desire to bring claims based on the use of certain financial information and/or the

management and/or reporting of her financial accounts, the specifics of those claims are unclear.

It is not clear from Prater's Amended Complaints how many accounts are at issue, which

accounts they are, why she believes the information reported about those accounts is improper (if

that is what she is alleging), and how many of the Defendants participated in each of the relevant

events such that they are civilly liable to her under the federal laws she invokes.  Relatedly, it is

also not clear whether the loans to which she refers were loans she applied for and received,

loans improperly taken under her name, or both (depending upon the loan).  As with her initial

Complaint in this case, Prater for the most part "does not clearly identify which Defendants are

responsible for which conduct, and appears to refer generally to numerous incidents, making it

difficult to understand the events giving rise to her claims."  *Prater*, 2021 WL 3869940, at *3.

Her allegations are also disjointed, in that they appear to refer to different events within the same

sentence and do not provide a clear narrative that the Court can follow to understand the "who, what, where, when and why' of [her] claim[s]." *See Gambrell v. S. Brunswick Bd. of Educ.*, Civ. A. No. 18-16359, 2019 WL 5212964, at \*4 (D.N.J. Oct. 16, 2019).  For these reasons, the Complaint fails to comply with Rule 8.  *See Gutierrez v. TD Bank*, Civ. A. No. 11-5533, 2012 WL 272807, at \*5 (D.N.J. Jan. 27, 2012) (finding complaint deficient for several reasons, including: "Plaintiffs do not indicate, for example: which exact disclosures required by law were not provided; the nature and extent of any credit reporting which occurred by Defendants in violation of federal law; what, if anything, was inaccurate about such reporting; . . . what representations, if any, Plaintiffs made to Defendants regarding their financial circumstances and their 'ability to repay' justifying their allegations regarding Defendants predation, and so on").  There are also other deficiencies in Prater's claims, which the Court will address below.

### B.  Civil Rights Claims

Liberally construing her Amended Complaints, Prater may again be raising civil rights claims pursuant to § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2)

whether the private party has acted with the help of or in concert with state officials; and (3)

whether the state has so far insinuated itself into a position of interdependence with the acting

party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*,

589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Here, nothing in the Amended Complaints suggests that any of the Defendants are state

actors. *See Abulkhair v. Liberty Mut. Ins. Co.*, 441 F. App'x 927, 931 (3d Cir. 2011) (*per*

*curiam*) ("The alleged misconduct of Liberty Mutual and its attorneys and adjustor in

Abulkhair's case is not fairly attributable to the state."); *James v. Heritage Valley Fed. Credit*

*Union*, 197 F. App'x 102, 106 (3d Cir. 2006) (*per curiam*) (dismissing claims "against the

Heritage Valley Federal Credit Union, its President and Chairman, Ames and Dunkelberger

respectively, and an employee, Jane Gee" because those individuals are not state actors).

Accordingly, there is no basis for any § 1983 claims.

## C. RICO Claims

The Racketeer Influenced and Corrupt Organizations Act ("RICO") "makes it unlawful

'for any person employed by or associated with any enterprise engaged in, or the activities of

which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in

the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Ins.*

*Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)).  To

state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct

(2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Id.* (internal quotations

omitted).  "In order to have standing to litigate a civil RICO claim, a plaintiff must show that she

suffered an injury to her business or property and that the injury was proximately caused by the

defendant's racketeering activities."  *Miller v. Pocono Ranch Lands Prop. Owners Ass'n Inc.*,

557 F. App'x 141, 145 (3d Cir. 2014) (*per curiam*).

To the extent Prater is again raising RICO claims, they rest entirely on conclusory

references to racketeering, which may not be credited as true on their own.  Her allegations of

racketeering are wholly unsupported by any factual allegations supporting a pattern of

racketeering activity here.  Accordingly, Prater has failed to state a plausible RICO claim.

### D.  Truth in Lending

Prater again alleges violations of the Truth in Lending Act ("TILA").  "Congress enacted

TILA in 1968, as part of the Consumer Credit Protection Act, Pub.L. 90–321, 82 Stat. 146,

as amended, 15 U.S.C. § 1601 *et seq.,* to 'assure a meaningful disclosure of credit terms so that

the consumer will be able to compare more readily the various credit terms available to him and

avoid the uninformed use of credit,' § 102, codified in 15 U.S.C. § 1601(a)."  *Koons Buick*

*Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 53-54 (2004); *Rossman v. Fleet Bank (R.I.) Nat. Ass'n*,

280 F.3d 384, 389 (3d Cir. 2002) (explaining that TILA "requires a series of disclosures that

must be made before the consummation (the point at which legal obligations attach) of the

underlying credit agreement, as well as at certain other specified times").  The Amended

Complaints do not describe the contours of any financial transactions in which credit was

extended to Prater nor do they provide the context in which any relevant extension of credit

occurred.  As with Prater's initial Complaint, it is not clear "what aspect of this statute Prater

believes was violated" and she has again failed to allege plausibly "that credit terms were not

adequately disclosed to her."  *Prater*, 2021 WL 3869940, at *4.  Accordingly, Prater has again

failed to state a TILA claim.  *See Bonilla v. Am. Heritage Fed. Credit Union*, Civ. A. No. 20-

2053, 2020 WL 2539197, at *7 (E.D. Pa. May 19, 2020) ("Ms. Bonilla does not allege the Credit

Union, or any of the individual Defendants, failed to disclose terms of a credit agreement to Ms.

Bonilla as required by TILA."), *aff'd*, 2021 WL 3612166 (3d Cir. Aug. 16, 2021).  Prater uses

the phrase "predatory lending" (*see* ECF No. 13 at 3), but it is unclear what she means by this or

how it translates into a federal claim under this or any other statute.

### E.  ECOA Claims

Prater also invokes the ECOA, apparently based on allegations of disability

discrimination.  The ECOA "bans discrimination based on race, color, religion, national origin,

sex, marital status, age, [and] the fact that the applicant's income is derived from public

assistance."  *Nat'l State Bank, Elizabeth, N. J. v. Long*, 630 F.2d 981, 984 (3d Cir. 1980); *see*

*also* 15 U.S.C. § 1691(a).  "To establish a prima facie case under the ECOA, a plaintiff must

show that (1) she was a member of a protected class; (2) she applied for credit from the

defendant; (3) she was qualified for the credit; and (4) despite qualifying, she was denied credit."

*Stefanowicz v. SunTrust Mortg.*, 765 F. App'x 766, 772 (3d Cir. 2019) (*per curiam*) (citing

*Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268 n.5 (3d Cir. 2010)).  A complaint

asserting claims of discrimination must "put forth allegations that raise a reasonable expectation

that discovery will reveal evidence of the necessary element."  *Fowler v. UMPC Shadyside*, 578

F.3d 203, 211 (3d Cir. 2009) (quotations omitted) (discussing pleading standards in the context

of discrimination in employment).

Prater alleges that she was discriminated against in connection with a disability.

However, the ECOA does not proscribe disability discrimination.  In any event, Prater has not

clearly described her disability or disabilities and has not alleged plausibly that she was

discriminated against in connection with the provision of credit (or otherwise) due to those

disabilities.  Accordingly, Prater has not stated a claim under the ECOA.

**F. FDCPA Claims**

It is possible that Prater intended to raise claims pursuant to the Fair Debt Collection

Practices Act ("FDCPA") given her reference to deceptive business practices. "The FDCPA

provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt

collection practices by debt collectors." *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232

(3d Cir. 2005). "'To state a claim under the FDCPA, a plaintiff must establish that: (1) he or she

is a consumer who was harmed by violations of the FDCPA; (2) that the 'debt' arose out of a

transaction entered into primarily for personal, family, or household purposes; (3) that the

defendant collecting the debt is a 'debt collector,' and (4) that the defendant violated, by act or

omission, a provision of the FDCPA.'" *Pressley v. Capital One*, 415 F. Supp. 3d 509, 512-13

(E.D. Pa. 2019) (quoting *Johns v. Northland Grp., Inc.*, 76 F. Supp. 3d 590, 597 (E.D. Pa.

2014)).

Prater has not alleged a plausible FDCPA claim because she has not clearly alleged that

any of the Defendants were debt collectors who used abusive or unfair practices in attempting to

collect a debt from her. Prater repeatedly uses the word fraud in her Amened Complaints, but

without further factual support, her allegations do not translate into a plausible FDCPA claim.

*See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'"); *Humphreys v. McCabe Weisberg &

Conway, P.C.*, 686 F. App'x 95, 97 (3d Cir. 2017) (*per curiam*) (FDCPA claim was not pled

based on "conclusory and speculative statements that cannot survive a motion to dismiss").

**G. FCRA Claims**

Prater also raises claims under the FCRA. The FCRA was enacted "to ensure fair and

accurate credit reporting, promote efficiency in the banking system, and protect consumer

13

privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (noting that the FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner" (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010))).  In the language of the FCRA, credit reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).

"The FCRA confers on a consumer a right to have the negative information on his or her credit report investigated for accuracy." *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 211 (E.D. Pa. 2007).  In that regard, if a consumer disputes the completeness or accuracy of information contained in her file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C.A. § 1681i(a)(1)(A). "Generally speaking, a consumer reporting agency does not violate the FCRA's requirement that it 'follow reasonable procedures to assure maximum possible accuracy' of credit reports or to 'reinvestigate' consumer disputes of information if the information that it reports is factually accurate." *Williams v. Experian Info. Sols., Inc.*, Civ. A. No. 14-8115, 2016 WL 3466089, at *3 (D.N.J. June 21, 2016).  Additionally, the agency "may terminate a reinvestigation of information disputed by a consumer . . . if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681i(a)(3)(A). Although Prater generally alleges that the credit reporting agencies failed to investigate her

disputes, she has not identified the allegedly incorrect information in her credit history, clearly

explained why the information was incorrect, or alleged any facts about when and how she

disputed that information with the credit reporting agencies.  Accordingly, she has not stated a

plausible FCRA claim against them.

Prater also appears to be asserting FCRA claims against other Defendants as furnishers of

information to the credit reporting agencies.  "To state a viable claim under the FCRA regarding

the interplay between the furnisher and the credit reporting agency, a plaintiff must allege that

she (1) sent notice of disputed information to a consumer reporting agency, (2) the consumer

reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed

to investigate and modify the inaccurate information."  *Washington v. Freedom Mortg.*, Civ. A.

No. 20-09332, 2021 WL 1100637, at *3 (D.N.J. Mar. 23, 2021) (internal quotations omitted); *see*

*also* 15 U.S.C. §§ 1681s-2(b).  If the furnisher fails to comply with its obligations under the Act,

"the aggrieved consumer can sue for noncompliance."  *Hoffmann v. Wells Fargo Bank, N.A.*, 242

F. Supp. 3d 372, 391 (E.D. Pa. 2017); *see also Eades v. Wetzel*, 841 F. App'x 489 (3d Cir. 2021)

(*per curiam*) ("[U]nder the FCRA, '15 U.S.C. § 1681s-2(b) is the only section that can be

enforced by a private citizen seeking to recover damages caused by a furnisher of information.'"

(quoting *SimmsParris*, 652 F.3d at 358) (alteration omitted)).  Here, Prater has not clearly

identified the accounts in question, clearly described the misleading information in those

accounts, or clearly alleged that she filed a dispute with the credit reporting agencies about a

particular account or accounts to which the furnisher of information failed to respond.  *See*

*Pressley*, 415 F. Supp. 3d at 513 (dismissing FCRA claim when plaintiff had "not (1) identified

the accounts at issue, (2) described the allegedly false and misleading information that appears in

the accounts, (3) stated that she filed a dispute regarding the false and misleading information; or

15

(4) alleged that Capital One failed to investigate and modify the inaccurate information"").

Accordingly, she has failed to state a FCRA claim against any Defendants as furnishers of

information.  *See Schiano v. HomEq Servicing Corp. & HomEq Servicing*, 832 F. App'x 116,

120 (3d Cir. 2020) (allegations that a defendant failed to "'fully and properly investigate' the

matter" were conclusory and did not state a claim).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Prater's motion to consider her Amended

Complaints and will dismiss those Amended Complaints.[4]  As Prater has already been given

leave to amend and has been unable to do so, the Court concludes that further attempts at

amendment would be futile.  The Motion for Additional Time to Amend Case is denied.[5]  An

Order follows, which dismisses this case.

**BY THE COURT:**

**/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, C.J.**

---

[4] To the extent Prater intended to raise claims not discussed above, they fail as not clearly plead and, therefore, as implausible.  This includes any claims she sought to bring in connection with her reference to a chapter of the United States Code addressing criminal liability for false statements (ECF No. 13 at 3) and claims for "Anti Trust Laws Violations" (*id.* at 2).  Additionally, if Prater intended to raise claims under state law, which is not clear, she has not clearly alleged an independent basis for the Court's jurisdiction over those claims.  *See* 28 U.S.C. § 1332(a).

[5] To the extent the Motion can be construed as a request for counsel, that request is also denied. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).